UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE GUADARRAMA,

Plaintiff,

v.

C. RANDY LEWIS, et al.,

Defendants.

No. 2: 16-cv-2671 JAM KJN P

ORDER AND FINDINGS AND RECOMMENDATIONS

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against defendants Fernandez, Greenleaf, Griffith and Landis. Plaintiff alleges that defendants provided him with inadequate dental care in violation of the Eighth Amendment and state law.

Defendant Landis is represented by private counsel with respect to the state law claims, and by the Office of the Attorney General with respect to the constitutional claims. Defendants Greenleaf and Griffith are represented by the Office of the Attorney General with respect to all claims. Defendant Fernandez is represented by private counsel with respect to all claims.

Pending before the court is a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the Office of the Attorney General on behalf of defendants Landis, Greenleaf and Griffith. (ECF No. 47.) Also pending is a motion to dismiss, pursuant to Rule

12(b)(6), filed by defendant Fernandez. (ECF No. 50.)

For the reasons stated herein, the undersigned recommends that defendants' motions be granted. The undersigned also herein recommends dismissal of the state law claims.

Plaintiff filed two oppositions to the motion to dismiss filed by defendants Landis, Greenleaf and Griffith. (ECF Nos. 55, 58, 59, 60.) Although plaintiff was not authorized to file two oppositions, the undersigned has reviewed both pleadings in evaluating the motion to dismiss.

Plaintiff filed one opposition to defendant Fernandez's motion to dismiss. (ECF No. 63.)

II. Legal Standard for Motion Brought Pursuant to Rule 12(b)(6)

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. Iqbal, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013). Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). However, the court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (citing Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)).

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. Chubb Custom Ins. Co., 710 F.3d at 956; Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

III. Legal Standard for Eighth Amendment Claim

"Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). This standard applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).

The two-part test for deliberate indifference requires the plaintiff to show (1) "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) "the defendant's response to that need was deliberately indifferent." Jett, 439 F.3d at 1096 (internal citations and quotations omitted). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health ...." Farmer v. Brennan, 511 U.S. 825, 837 (1994). However, negligence in diagnosing or treating a medical condition does not give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Moreover, a difference of opinion between

the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

IV. Plaintiff's Claims

This action proceeds on the first amended complaint filed February 9, 2017. (ECF No. 15.) Plaintiff alleges that defendants Landis and Fernandez are dentists, defendant Greenleaf is a medical doctor, and defendant Griffith is a "DO." (Id. at 2.) It appears that by "DO" plaintiff may mean doctor of osteopathic medicine.

Plaintiff alleges that on May 5, 2015, defendant Landis extracted plaintiff's lower left wisdom tooth. (Id. at 4.) After the procedure, plaintiff told defendant Landis that he must have pulled something else, because plaintiff felt excruciating pain in his neck. (Id.) Defendant Landis told plaintiff that that was why he was providing plaintiff with Tylenol # 4 for pain, and that the pain would go away in six months. (Id.) Plaintiff alleges that defendant Landis did not examine plaintiff to determine what was causing his neck pain nor did he refer plaintiff to a physician. (Id.) Defendant Landis sent plaintiff back to his yard and housing unit. (Id.)

On May 9, 2015, plaintiff submitted a medical request form stating that he was in great pain after having his wisdom tooth pulled, and that the pain medication was not working. (Id.) On May 11, 2015, Nurse Bassett saw plaintiff regarding one of the medical request forms. (Id.)

On May 12, 2015, defendant Fernandez saw plaintiff. (Id. at 5.) Defendant Fernandez placed some liquid on the extracted site. (Id.) Plaintiff told defendant Fernandez that his neck was stiff and that he felt pain going down to his chest. (Id.) Defendant Fernandez told unknown medical staff to take an x-ray of plaintiff's jaw. (Id.) The unknown medical staff told defendant Fernandez that she did not want to touch plaintiff because she did not want to hurt him. (Id.)

On May 13, 2015, plaintiff was admitted to the Correctional Treatment Center ("CTC") for an abscess/infection at the extraction site. (Id.) On May 19, 2015, defendant Greenleaf discharged plaintiff from the CTC. (Id. at 6.)

On May 21, 2015, plaintiff submitted a medical request form stating that since having his tooth pulled, he had suffered severe pain in the left side of his jaw that radiated down the side of his neck. (Id.) Plaintiff wrote that it was hard to eat a regular meal or swallow food. (Id.)

4

On June 26, 2015, plaintiff submitted a medical request form asking when he was scheduled to see a doctor regarding his face and jaw and the dental issue that went wrong. (Id.)

Plaintiff alleges that the dental staff and medical staff were playing the "ping pong effect" on him. (Id.) Plaintiff alleges that dental staff stated that it was the medical staff's job to address his neck and jaw problem, and the medical staff "tossed it back to dental." (Id.)

On September 27, 2015, plaintiff submitted a 602 grievance regarding "dental treatment and pain medication for dental surgery." (Id. at 6-7.)

On October 10, 2015, defendant Fernandez examined plaintiff with an unknown medical officer. (Id. at 7.) The unknown medical officer placed his fingers inside of plaintiff's mouth on the extraction site. (Id.) Defendant Fernandez saw the excruciating pain plaintiff suffered when the finger was placed on the extraction site. (Id.) However, in his report of the exam, defendant Fernandez wrote that plaintiff received a dental examination on October 10, 2015, and x-rays on October 5, 2015, from which it was determined that there was no dental or oral source contributing to the left side neck pain. (Id.) Defendant Fernandez wrote that there was no clear dental indication for pain medication at this time. (Id.)

On October 22, 2015, defendant Griffith saw plaintiff. (Id.) Defendant Griffith stated that she was not "biting into plaintiff's medical issue" until she saw the facts. (Id.)

On November 3, 2015, plaintiff was seen by the unknown medical officer who placed his finger in plaintiff's mouth on October 10, 2015. (Id. at 8.)

On December 3, 2015, defendant Griffith saw plaintiff at Telemedical regarding plaintiff's request for a soft diet and ibuprofen. (Id.)

On December 22, 2015, plaintiff saw Dr. Koshy, a neurologist, at Telemedical. (Id.) Dr. Koshy ordered an MRI of plaintiff's brain, head and neck area. (Id.)

On December 25, 2015, plaintiff submitted a medical request form stating that his pain medication, Trileptal, had run out. (Id.) Plaintiff wrote that he had not received his pain medication that morning. (Id.)

On December 27, 2015, plaintiff submitted another medical request form again stating that his pain medication, Trileptal, had run out. (Id. at 8-9.)

On January 15, 2016, plaintiff submitted a medical request form stating that his medication, Baclofen, had run out. (Id. at 9.) On February 8, 2016, plaintiff submitted a medical request form stating that that Baclofen and Carbamazefine did not work. (Id.) Plaintiff wrote that his jaw "hurt like hell…when chewing." (Id.) Plaintiff alleges that he was diagnosed with glossophaynegeal. (Id.)

On February 8, 2016, plaintiff submitted a 602 grievance regarding pain medication. (Id.)

On March 22, 2016, Dr. Koshy saw plaintiff at Telemedical. (Id.)

On June 16, 2016, plaintiff submitted a medical request form stating that he needed to see a face specialist in order to be able to see Dr. Koshy. (Id. at 10.)

On June 27, 2016, plaintiff submitted a medical request form stating that he was out of medication but he still had a lot of pain in his left jaw and neck area. (Id.) Plaintiff wrote that he could not sleep because of the constant pain. (Id.)

On June 28, 2016, plaintiff submitted a 602 grievance requesting pain medication. (Id.)

On July 26, 2016, plaintiff went to an outside nose, ear and throat doctor. (Id.) On September 6, 2016, plaintiff went to physical therapy, which did not work "but made it worse." (Id.)

On September 12, 2016, physician's assistant Miranda gave plaintiff two opinions regarding surgery to try and fix plaintiff's medical problems. (Id. at 10-11.) Defendant Miranda stated that plaintiff could try microvascular decompression or percutaneous stereotactic radiofrequency rhizotomy. (Id. at 11.)

Plaintiff alleges that defendants violated his Eighth Amendment right to adequate medical care and state law.[1]

////

////

---

[1] Plaintiff raises two separate Eighth Amendment claims. (ECF No. 15 at 12- 15.) Plaintiff alleges that defendants violated his Eighth Amendment right to adequate medical care. (Id. at 12-13.) Plaintiff also alleges that defendants violated his Eighth Amendment right to have personal safety. (Id. at 13-14.) The undersigned finds that plaintiff's claim alleging violation of his Eighth Amendment right to personal safety is not a separate claim from the claim alleging violation of the Eighth Amendment right to adequate medical care.

V. Discussion

    A. Defendants Greenleaf, Griffith and Landis

        1. Objective Component

Defendants argue that the amended complaint does not sufficiently plead facts that plaintiff had a sufficiently serious medical need, i.e., the objective prong of the deliberate indifference standard. Defendants argue that, "[a]s the Ninth Circuit recognized in Jett, 'sufficiently serious' means an injury that, "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for the doctor's attention.' Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005.)." (ECF No. 47-1 at 6.)

Defendants go on to argue, in part, that plaintiff's injuries could not have been "sufficiently serious" because plaintiff does not allege that a doctor ordered a course of treatment or action for his pain that defendants disregarded. (Id. at 6.) Defendants also argue that, at best, plaintiff has alleged that defendants tried, but could not determine, the source of his jaw and neck pain. (Id.) In other words, defendants argue, plaintiff's medical/dental problem was not so obvious that it could be diagnosed by lay person. (Id. at 7.) Defendants argue that plaintiff's condition was not "sufficiently serious" because the complaint does not show that defendants refused to provide medical care or caused his condition to worse. (Id.)

Defendants have not accurately described the Ninth Circuit's test for the objective component of deliberate indifference. In Jett v. Penner, the Ninth Circuit stated that, for the objective component of an Eighth Amendment claim, the prisoner must show a "'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1059 (9th Cir. 1997 (en banc).

Defendants suggest that the Ninth Circuit has adopted the standard discussed by the Tenth Circuit in Mata v. Saiz for the objective component of deliberate indifference, i.e., plaintiff is required to demonstrate that his injury "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for

a doctor's attention." Mata v. Saiz, 427 F.3d at 751. The undersigned is not aware of any Ninth Circuit case adopting this standard.

In determining whether plaintiff's complaint has adequately pleaded the objective component of deliberate indifference, the undersigned will consider the standard set forth by the Ninth Circuit rather than the Tenth Circuit.[2]

Plaintiff alleges that after defendant Landis extracted his wisdom tooth on May 5, 2015, he suffered ongoing excruciating pain. Based on these allegations, the undersigned finds that plaintiff has pled sufficient facts demonstrating that he had a serious medical need, as defined by the Ninth Circuit. Jett v. Penner, 974 F.2d at 1059 (citations omitted) (for the objective component of an Eighth Amendment claim, the prisoner must show a "'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'").

2. Subjective Component

Defendants generally argue that plaintiff has not plead sufficient facts in support of the subjective component of the deliberate indifference standard, i.e., that defendants did not knowingly disregard an excessive risk to plaintiff's health. Defendants argue that the exhibits attached to the amended complaint demonstrate that HDSP medical staff, including defendants, made efforts to determine the source of plaintiff's pain, provided him with pain medication, and acted with caution by scheduling plaintiff for further testing to rule out potential serious medical conditions. Defendants argue that the medical records demonstrate that plaintiff disagrees with defendants' medical decisions and that his injury did not improve after defendants tried several different treatment methods.

With regard to the subjective component, the undersigned examines plaintiff's individual claims against each defendant.

---

[2] The undersigned previously addressed (and rejected) the Office of the Attorney General's citation to Mata v. Saiz, 427 F.3d 745 (10th Cir. 2005) in Woods v. Swift, 2015 WL 3442540 at *3 (E.D Cal. 2015).

8

*Defendant Landis*

The only allegation against defendant Landis is that on May 5, 2015, defendant Landis extracted plaintiff's lower wisdom tooth. After the procedure, plaintiff alleges that he told defendant Landis that he felt excruciating pain in his neck. Defendant Landis allegedly told plaintiff that he would prescribe Tylenol # 4 for pain. Plaintiff alleges that defendant Landis should have examined his neck and/or referred him to a doctor.

Plaintiff is apparently claiming that defendant Landis caused his ongoing neck and face pain during the May 5, 2015 extraction. Plaintiff is also claiming that defendant Landis should have provided further treatment on May 5, 2015, after plaintiff told him about the pain, i.e, defendant Landis should have examined plaintiff or referred him to a doctor.

Assuming defendant Landis caused plaintiff's neck and face pain during the extraction, plaintiff has pled no facts supporting a claim that defendant Landis acted with deliberate indifference. Plaintiff's allegations suggest that, at most, defendant Landis's *negligence* during the extraction caused an injury to plaintiff that led to his neck and face pain. Plaintiff pleads no facts suggesting that defendant Landis caused plaintiff's alleged injury by acting with deliberate indifference. As discussed above, negligence or medical malpractice do not support an Eighth Amendment claim.

The undersigned also finds that defendant Landis's alleged failure to examine plaintiff's neck or refer him to a doctor after the extraction does not demonstrate deliberate indifference. Defendant Landis prescribed Tylenol # 4 for pain after the extraction. Defendant Landis did not fail to respond to plaintiff's complaints of pain. For this reason, defendant Landis's failure to examine plaintiff or refer him to a physician did not constitute deliberate indifference Jett, 439 F.3d at 1096 (deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain, and harm caused by the deliberate indifference).

Plaintiff may also be claiming that defendant Landis caused him to suffer from the abscess for which he received treatment in the CTC. However, plaintiff has pled no facts from which it can be inferred that defendant Landis acted with deliberate indifference with respect to the abscess. Rather, the allegations suggest that, at most, defendant Landis acted negligently in

9

"causing" the abscess.

Accordingly, for the reasons discussed above, the undersigned recommends that defendants' motion to dismiss the Eighth Amendment claims against defendant Landis be granted.

*Defendant Greenleaf*

The only allegation against defendant Greenleaf is that he discharged plaintiff from the CTC on May 19, 2015, where plaintiff had received treatment for an abscess at the extraction site beginning on May 13, 2015. Plaintiff alleges that he continued to suffer severe pain in his face, jaw and neck after his discharge from the CTC. From these allegations, the undersigned infers that plaintiff is alleging that defendant Greenleaf should not have discharged him from the CTC because plaintiff still suffered from severe pain.

The undersigned has reviewed the medical records attached to the amended complaint regarding the medical treatment plaintiff received in the CTC. These records include a primary care provider progress note signed by defendant Greenleaf on May 13, 2015, following plaintiff's admission to the CTC. (ECF No. 15 at 52.) Defendant Greenleaf wrote that plaintiff had a "soft tissue neck infection" following a dental proceeding. (Id.) Defendant Greenleaf wrote that he discussed the issue with an oral surgeon and prescribed antibiotics clindamycin and flagyl. (Id.)

In another entry dated May 13, 2013, defendant Greenleaf wrote that plaintiff reported that it hurt to open his mouth. (Id. at 54.) Plaintiff described his pain level at 10/10. (Id.) Defendant Greenleaf wrote that plaintiff had, "pain [after] molar extraction in jaw and neck but w/o physical finding to suggest soft tissue plain abscess." (Id.) Defendant Greenleaf then wrote, "to be safe, I'll admit to CTC to start I.V. flagyl and I.V. clindamycin." (Id.) Defendant Greenleaf then wrote that defendant Landis would see plaintiff in the morning. (Id.) Defendant Greenleaf prescribed Tylenol # 4 for pain and Ibuprofen for plaintiff's fever, which was 100 degrees. (Id.)

Attached to the amended complaint are plaintiff's nursing care records for May 13-19, 2015. (Id. at 56-72.) These records indicate that plaintiff received I.V.'s containing flagyl and clindamycin on May 13, 2015 through May 19, 2015. The undersigned sets forth some of these

records herein.

An entry from May 14, 2015, at 2130, states that plaintiff did not complain of pain. (Id. at 15.) An entry from May 15, 2015, at 0100, states that plaintiff complained of jaw pain at 6/10. (Id. at 63.) Plaintiff was given 600 mg Ibuprofen. (Id.) On May 15, 2015, at 1500, plaintiff reported no distress. (Id.) On May 18, 2015, at 5:30, plaintiff reported left face pain at 8/10. (Id. at 69.) Plaintiff was given Ibuprofen. (Id.) An entry from May 18, 2015, at 11:30, states that plaintiff was on a mechanical soft diet, he ate most of his meal and "tolerated well." (Id.) Entries from 1600 and 1700 on May 18, 2015, reported that plaintiff finished 100 % of his meal. (Id.)

An entry from May 19, 2015, at 9:30, i.e., the day plaintiff was discharged, states that plaintiff did not complain of distress and that his pain was controlled with "routine rx." (Id. at 71.) The entry states that plaintiff did not complain of jaw pain or toothache. (Id.) An entry from May 19, 2015, at 11:30, states that plaintiff ate 100% of his lunch and did not complain of discomfort. (Id.)

Plaintiff also provided defendant Greenleaf's discharge orders which described plaintiff's discharge diagnosis as left jaw pain post tooth extraction. (Id. at 73.) Defendant Greenleaf wrote that plaintiff was to return to the dental clinic within seven to ten days for a follow up. (Id.) Defendant Greenleaf wrote that all meds were discontinued but for ibuprofen for pain. (Id.)

On May 22, 2015, plaintiff filed a request for health care services form stating that on May 15, 2015, he had his tooth pulled on the left side and since that day, he has had severe pain in the left side of his jaw that radiates down the side of his neck. (Id. at 75.) Plaintiff wrote that it was hard for him to eat a regular meal or swallow his food. (Id.)

After reviewing the amended complaint and attached exhibits, the undersigned finds that plaintiff has not alleged sufficient facts in support of a claim that defendant Greenleaf acted with deliberate indifference with respect to the treatment plaintiff received while in the CTC and defendant Greenleaf's decision to discharge plaintiff from the CTC. The records demonstrate that defendant Greenleaf was not sure what was causing plaintiff's pain. In an abundance of caution, defendant Greenleaf admitted plaintiff to the CTC and prescribed antibiotics and pain medication. Defendant Greenleaf approved plaintiff's discharge after plaintiff (apparently) completed the

course of antibiotics and had responded to pain medication. At the time of plaintiff's discharge, defendant Greenleaf ordered plaintiff to follow up with the dental clinic and continued plaintiff's pain medication. These actions do not demonstrate that defendant Greenleaf acted with deliberate indifference to plaintiff's serious medical needs. The records attached to the amended complaint demonstrate that defendant Greenleaf did not fail to respond to plaintiff's complaints of pain.

The records attached to the amended complaint show that plaintiff received further treatment for his complaints of facial and neck pain. A response to a grievance filed by plaintiff states that on November 3, 2015, plaintiff was seen by an oral maxillofacial surgeon. (Id. at 84.) The oral surgeon recommended that plaintiff be seen by a neurologist for definitive diagnosis and treatment. (Id.) On December 22, 2015, plaintiff was seen by Dr. Koshy via telemedicine. (Id.) Dr. Koshy ordered an MRI of plaintiff's brain/head and neck area. (Id.)

Attached to the amended complaint is a report by Dr. Koshy dated March 22, 2016. (Id. at 117.) Dr. Koshy diagnosed plaintiff with "facial pain/trigeminal neuralgia," "glossopharyngeal neuralgia," and intermittent hearing difficulty. (Id. at 118.) Regarding a treatment plan, Dr. Koshy increased plaintiff's dose of Tegretol and recommended adding amitriptyline. (Id.) Dr. Koshy stated that he would "push" the amitriptyline" during the next visit to see if an increased dose of amitriptyline in combination with carbamazepine would improve the symptoms of pain. (Id.) Dr. Koshy recommended that plaintiff be referred to an ENT for nasal congestion, throat pain and earache that he suffered with intermittently. (Id.)

Dr. Koshy's records suggest that defendant Greenleaf may have misdiagnosed plaintiff with an abscess in May 2015. In other words, plaintiff's pain in May 2015 appears to have been caused by something other than an abscess at the site of the tooth extraction, as indicated by the diagnosis by Dr. Koshy. However, defendant Greenleaf's alleged failure to properly diagnose plaintiff in May 2015 was, at best, negligent, which does not violate the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Accordingly, for the reasons discussed above, the undersigned recommends that defendants' motion to dismiss plaintiff's Eighth Amendment claim against defendant Greenleaf be granted.

*Defendant Griffith*

The amended complaint contains two allegations against defendant Griffith. Plaintiff first alleges that on October 22, 2015, defendant Griffith told plaintiff that she was not "biting into plaintiff's medical issue until she saw the facts." In support of this claim, plaintiff cites exhibit 15, which is a priority pass for plaintiff to attend a "telemed" medical appointment regarding "medical/nursing." (ECF No. 15 at 90.)

Plaintiff is apparently claiming that defendant Griffith refused to treat him on October 22, 2015. However, plaintiff provides no facts in support of this claim. For example, plaintiff does not allege what he told defendant Griffith during the October 22, 2015 appointment. Without additional information, the undersigned cannot find that defendant Griffith acted with deliberate indifference on October 22, 2015. Moreover, as indicated above, the medical records indicate that plaintiff saw the oral maxillofacial surgeon on November 3, 2015, and Dr. Koshy on December 22, 2015. Thus, plaintiff's complaints regarding face and neck pain were not being ignored.

Plaintiff also alleges that on December 3, 2015, he saw defendant Griffith at Telemedical regarding his request for a soft diet and ibuprofen. This allegation does not state an Eighth Amendment claim.

Accordingly, for the reasons discussed above, the undersigned recommends that defendants' motion to dismiss plaintiff's Eighth Amendment claim against defendant Griffith be granted.

3. Qualified Immunity

Defendants also move to dismiss on grounds that they are entitled to qualified immunity.

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is

presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

Because the undersigned finds that plaintiff has not alleged sufficient facts in support of his Eighth Amendment claims, no further discussion of qualified immunity is warranted.

### B. Defendant Fernandez

Defendant Fernandez argues that plaintiff has not pled sufficient facts to establish a claim of deliberate indifference to serious medical needs.

#### 1. May 2015 Examination

Plaintiff alleges that defendant Fernandez examined him on May 12, 2015. Defendant Fernandez allegedly put liquid on the extracted site. Plaintiff allegedly told defendant Fernandez that his neck was stiff and that he felt pain going down to his chest. Defendant Fernandez allegedly asked unknown medical staff to take plaintiff's x-ray, but they said they did not want to touch plaintiff.

The exhibits attached to the amended complaint describe defendant Fernandez's treatment of plaintiff in mid-May 2015 as follows. Plaintiff attaches medical records indicating that on May 11, 2015, defendant Fernandez prescribed clindamycin and a mouth rinse. (ECF No. 15 at 48.) The record from May 11, 2015, does not state that defendant Fernandez ordered an x-ray. (Id.)

Plaintiff has provided a record indicating that defendant Fernandez saw him on May 13, 2015. (Id. at 56.) Plaintiff reported that he had a lot of diarrhea that night before and stopped

taking the antibiotics "like you said." (Id.) Plaintiff reported that the pain was worse today, and was down to his chest. (Id.) Plaintiff reported that he could not turn his head, especially to the left, and that the pain went up to his head. (Id.) Defendant Fernandez wrote that plaintiff complained of pain when he palpated his neck. (Id.) Defendant Fernandez noted "firmness anterior to SCM muscle." (Id.) Plaintiff denied problems swallowing but he could not open his mouth without pain. (Id.) Defendant Fernandez wrote that he spoke with defendant Landis, and he (defendant Landis) advised sending plaintiff to CTC. (Id.) Defendant Landis told defendant Fernandez that he would speak with defendant Greenleaf regarding admission and recommended medication and IV fluids. (Id.)

Defendant Fernandez wrote, "I/P not improving S/P 17 Ext. increasing pain and ROM restrictions. I/P to be sent to TTA for observation and Tx. Determination…Asked RN Scovel to arrange for x-port to TTA…. advised I/P of plans to send to TTA for further Tx." (Id.)

The records described above, combined with plaintiff's allegations, do not demonstrate that defendant Fernandez acted with deliberate indifference when he treated plaintiff in mid-May 2015. Plaintiff appears to suggest that defendant Fernandez should have provided a different course of treatment, rather than prescribing antibiotics and the mouth rinse on May 11, 2015. As discussed above, it appears that plaintiff's symptoms were not caused by an infection but by some other condition, as indicated by Dr. Koshy's later diagnosis of trigeminal neuralgia and glossopharyngeal neuralgia. However, defendant Fernandez's failure to diagnose and treat these other conditions in May 2015 did not constitute deliberate indifference. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

The records demonstrate that after examining plaintiff on May 13, 2015, defendant Fernandez consulted with defendant Landis who advised sending plaintiff to CTC for additional treatment. As discussed above, plaintiff was sent to CTC where he remained until May 19, 2015. Defendant Fernandez did not act with deliberate indifference to plaintiff's serious medical needs when he spoke with defendant Landis regarding plaintiff's pain on May 13, 2015.

Plaintiff also alleges that unknown medical staff told defendant Fernandez that they did not want to touch plaintiff after he told them to perform an x-ray. Plaintiff does not state,

however, whether he received the x-ray defendant Fernandez ordered. As discussed above, the records indicate that on May 13, 2015, defendant Fernandez asked Nurse Scoval to arrange for a portable x-ray in the "TTA." The record does not demonstrate that plaintiff did not receive the x-ray defendant Fernandez ordered on May 13, 2015. Because plaintiff does not address whether he received the x-ray, and the circumstances surrounding any alleged failure to receive an x-ray, the undersigned does not find that plaintiff's allegations that an unknown medical staff told defendant Fernandez that they did not want to perform the x-ray state a potentially colorable Eighth Amendment claim against defendant Fernandez.

### 2. October 2015 Examination

Plaintiff alleges that on October 10, 2015, defendant Fernandez and an unknown medical officer examined plaintiff. The unknown medical officer put his finger on the extraction site in plaintiff's mouth. Plaintiff alleges that defendant Fernandez saw the excruciating pain plaintiff suffered when the finger was on the extraction site. However, in his report of the exam, defendant Fernandez wrote that plaintiff received a dental examination on October 10, 2015, and x-rays on October 5, 2015, from which it was determined that there was no dental or oral source contributing to the left side neck pain. Plaintiff alleges that defendant Fernandez also wrote that there was no clear dental indication for pain medication.

As discussed above, records attached to the amended complaint indicate that plaintiff had a consultation with an oral maxillofacial surgeon on November 3, 2015, who recommended that plaintiff be seen by a neurologist. Plaintiff was seen by neurologist Dr. Koshy on December 22, 2015, who later diagnosed plaintiff with trigeminal neuralgia and glossopharyngeal neuralgia. Thus, defendant Fernandez's alleged finding on October 10, 2015 that there was no dental or oral source contributing to plaintiff's neck and face pain was apparently correct. Defendant Fernandez's finding that there was no clear dental indication for pain medication was also apparently correct. Based on defendant Fernandez's conclusion, plaintiff was referred to the oral maxillofacial surgeon and, later, to neurologist Dr. Koshy, who was able to diagnose plaintiff. For these reasons, the undersigned does not find that defendant Fernandez acted with deliberate indifference during his examination of plaintiff on October 10, 2015.

Accordingly, the undersigned recommends that defendants' motion to dismiss the Eighth Amendment claims against defendant Fernandez be granted.

### C.  State Law Claims

Defendants Landis, Greenleaf and Griffith do not address plaintiff's state law claims. Defendant Fernandez moves to dismiss the state law claims made against him.

For the following reasons, the undersigned recommends that the court decline to exercise jurisdiction over plaintiff's remaining state law claims.

District courts tend to decline exercising supplemental jurisdiction over remaining state law claims when all federal law claims have been dismissed.  28 U.S.C. § 1367(c)(3); Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997).  Supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, and courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors ... including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims."  City of Chicago v. International College of Surgeons, 522 U.S. 156, 173 (1997).  In exercising its discretion, the court must consider whether retaining or declining jurisdiction will best accommodate "the objectives of economy, convenience and fairness to the parties, and comity."  Trustees of Construction Industry and Laborers Health and Welfare Trust v. Desert Valley Landscape & Maintenance, Inc., 333 F.3d 923, 925 (9th Cir. 2003).

The undersigned finds that to retain jurisdiction over plaintiff's remaining state law claims would hinder judicial economy, fairness and comity.  "[P]rimary responsibility for developing and applying state law rests with the state courts."  McGill v. Wachovia Morg., FSB, 2010 WL 2076942 at *1 (E.D. Cal. 2010).  Accordingly, plaintiff's state law claims should be dismissed without prejudice.

### D.  Dismissal Without Leave to Amend

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se.  Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se

litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987))). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1005-1006.

The undersigned finds that, for the reasons explained above, the amended complaint fails to state a claim upon which relief may be granted and that amendment would be futile. The motions to dismiss should be granted without leave to amend.

VI. Remaining Matters

Finally, plaintiff has requested appointment of counsel. (ECF No. 55.) Because the undersigned recommends that defendants' motions to dismiss be granted, plaintiff's motion for appointment of counsel is denied.

On November 7, 2018, counsel representing defendant Landis with respect to the state law claims filed a request to file under seal 2759 pages of plaintiff's medical records. (ECF No. 64.) Because the undersigned recommends dismissal of the state law claims, the request to file documents under seal is denied as unnecessary.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for appointment of counsel (ECF No. 55) is denied;

2. Defendant Landis's request to file documents under seal (ECF No. 64) is denied as unnecessary; and

IT IS HEREBY RECOMMENDED that:

1. The motion to dismiss filed by defendants Landis, Greenleaf and Griffith (ECF No. 47) be granted;

2. Defendant Fernandez's motion to dismiss (ECF No. 50) be granted;

3. The state law claims be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 19, 2018

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Guad2671.mtd